IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ASCENSION ORTHOPEDICS, INC., | § | |
| | § | |
| | § | |
| v. | § | A-06-CA-424 LY |
| | § | |
| CURASAN AG | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Motion to Dismiss and Motion to Compel Arbitration filed on June 21, 2006 (Clerk's Docket No. 12); Plaintiff's Response filed on July 3, 2006 (Clerk's Docket No. 16); and Defendant's Reply filed on July 14, 2006 (Clerk's Docket No. 18). Furthermore, as the Court requested supplemental briefing on the applicability of the Federal Arbitration Act (FAA) and *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204 (2006), Defendant's Supplemental Brief (Clerk's Docket No. 22 ) and Plaintiff's Supplemental Brief (Clerk's Docket No. 22) are also before the Court.

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. GENERAL BACKGROUND**

On June 11, 2004, curasan AG ("Supplier") and Ascension Orthopedics ("Distributor") entered into an International Distribution and Marketing Agreement (IDMA) whereby Supplier

granted Distributor exclusive distribution and marketing rights over its Cerasorb bone regeneration material for the territory of the United States of America. Provisions of the IDMA are copied below in pertinent part:

> Section XIII-1.Governing Law: Jurisdiction. "[The] rights and obligations [under the IDMA] shall be governed and construed under the laws of Texas without reference to conflicts of laws principles."
>
> Section XIII-2. Arbitration. "All disputes and controversies relating to the interpretation and performance of this Agreement that cannot be resolved by amicable negotiation shall be resolved by arbitration. . . . If a claim is initiated by Supplier, arbitration shall be held in Houston, TX, U.S.A. in accordance with the rules of the American Arbitration Association."
>
> Section XIII-7 Severability. "[If a court of competent jurisdiction decides that any portion of this agreement is invalid] the remainder of this agreement shall remain in full force and effect and bind the parties according to its terms."
>
> Section XIII-8 Entire Agreement. "This Agreement set forth the entire agreement and understanding of the parties relating to the subject matter hereof and merges all prior discussions between them."

In accordance with the arbitration clause, curasan initiated an arbitration proceeding against Ascension on May 18, 2006. On May 24, 2006, Ascension commenced a civil lawsuit against curasan in the 200th Judicial District Court for Travis County, Texas. On June 6, 2006, curasan removed this action under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000 and because it is a dispute between a citizen of Texas (Ascension Orthopedics, Inc- Incorporated in Deleware with its principle office in Austin, Texas) and a citizen of a foreign state (curasan AG- a citizen of Germany). curasan AG now requests this court to dismiss this action and compel arbitration. Accordingly, this Court must determine (1) whether a valid arbitration agreement exists, and (2) whether the dispute in question is within the scope of that agreement.

## II.  CHOICE OF LAW

The IDMA expressly provides that Texas law shall apply when the dispute is initiated by Supplier.  IDMA at Section XIII.1.  Furthermore, the IDMA calls for arbitration in Houston, Texas if it is initiated by the Supplier.  IDMA at Section XIII.2.  The issue of whether the parties are bound by an arbitration clause is determined by state law principles of contract law.  *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *American Rlty. Trust, Inc. v. JDN Real Estate-McKinney, L.P.*, 74 S.W.3d 527, 531 (Tex. App. – Dallas 2002, pet. denied). Therefore, the Court will use Texas law in determining the validity and scope of the agreement.  Nonetheless, because the Fifth Circuit has held that where, as here, an agreement designates Texas law "but does not exclude the FAA, the FAA and Texas law, including that state's arbitration law, apply concurrently because Texas law incorporates the FAA as part of the substantive law of that state."  *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 338 at n. 7 (5th Cir. 2004).

The Fifth Circuit has established a four part test in applying Chapter 2 of the FAA, also known as The Convention on the Recognition and Enforcement of Arbitral Awards.[1] Chapter 2 applies if: 1) there is a written agreement to arbitrate the dispute; 2) the agreement provides for arbitration in the territory of a Convention signatory; 3) the agreement to arbitrate arises out of a commercial legal relationship; and 4) a party to the agreement is not an American citizen. *Sedco v. Petroles Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985).  In the present case there is a written arbitration agreement, both Germany and the USA are signatories to the Convention, the arbitration forum is Texas as Supplier initiated arbitration, the agreement arises out

---

[1] Chapter 2 of the FAA applies not only to the recognition and enforcement of awards, but also to the recognition and enforcement of *agreements* to arbitrate in the first place. 9 U.S.C Title 1, Chapter 2, Section 202.

of a commercial legal relationship, and curasan is not an American citizen. Therefore, the Court will apply Texas law as well as the FAA and applicable legal precedent.

### III.  ANALYSIS

In reviewing Ascension's Motion to Dismiss and Compel Arbitration the Court must consider the: 1) validity and 2) scope of the arbitration agreement in the IDMA. Ascension must carry the burden of proving the existence of a valid agreement to arbitrate between the parties, and that the claims are within the scope of the arbitration agreement. *In re Oakwood Mobile Homes, Inc.* 987 S.W.2d 571, 573 (Tex. 1999). Under both Texas law and the FAA, once a party establishes that there is a valid agreement to arbitrate and that the causes of action raised in the lawsuit are within the scope of the arbitration clause, the Court must compel arbitration unless it finds the agreement is null and void, inoperative, or incapable of being performed.. TEX. CIV. PRAC. & REM. CODE §§ 171.021 and 171.025, *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996), Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, *Sedco v. Petroles Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985). Therefore this Court's inquiry is limited to the validity and scope of the arbitration agreement in the IDMA.

**A.      Validity of the Agreement**

Challenges to arbitration agreements can be divided into two categories: 1) challenges to the validity of the arbitration agreement itself; and 2) challenges to the validity of the contract as a whole, "either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye*, 126 S.Ct. At 1208. Notably absent from Ascension's brief is a claim of fraud in the inducement of the arbitration provision within the IDMA (Section XIII.2).

Instead its claims are limited to an attack on the IDMA as a whole. This failure is of note because "if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate – the federal court may proceed to adjudicate it." *Buckeye*, 126 U.S. at 1208 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)). However, the Court "may not consider claims of fraud in the inducement of the contract generally." *Id.* Ascension's claims are limited to fraud in the inducement of the contract generally.

Therefore, because of the separate enforceability of an arbitration provision "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole" (as in this case) "must go to the arbitrator." *Id.* at 1210. Accordingly, this Court must defer to the arbitrator in deciding the validity of the contract. Nonetheless, this Court does review whether the claims asserted are within the scope of the agreement and will now turn to that issue.

**B.    Scope of the Agreement**

Before turning to an analysis of the scope of the agreement the Court reviews Ascensions's claims by reference to its pleadings. Ascension seeks to recover damages and equitable relief for harm sustained as a result of curasan's fraud, misrepresentations and deceptive acts and practices, and in reliance upon false statements and conduct that induced Ascension to enter into the IDMA agreement. (Plaintiff's Original Complaint at §§ 5-8). Therefore, the Court will analyze whether these actions are within the scope of the arbitration agreement in the IDMA in accord with the Supreme Court's instruction to "determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymounth, Inc.*, 473 U.S. 614, 626 (1985). In determining whether these claims fall within the scope of the arbitration agreement, the Court will look at the terms of the parties' agreement and the factual allegations in the petition. *Prudential Sec.*

*Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995). Furthermore, the Court bears in mind that any doubt about the scope of an arbitration clause must be resolved in favor of arbitration and that the Court should enforce an arbitration clause unless it can be said with "positive assurance" that the clause is not susceptible to an interpretation that covers the dispute. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001), *Gerwell v. Moran*, 10 S.W.3d 28, 33 (Tex. App. – San Antonio 1999, no pet.). Additionally, the mere pleading of tort claims does not preclude the application of the arbitration clause so long as the claims "touch upon" matters covered by the written contract containing the arbitration clause. *In re Bruce Terminex Co.*, 988 S.W.2d 702, 703, 706 (Tex. 1998) (per curiam).

    In spite of plaintiff's claims that the causes of actions are independent of the contract and outside the scope of the arbitration agreement, plaintiff's original complaint undermines this very argument. For instance, plaintiff alleges damages stemming from its "efforts to market and distribute Cerasorb" which is its primary obligation under the IDMA. (Plaintiff's Original Petition § 4.6). Additionally, it claims losses from its "attempts to market and sell the product," both of which were contractual obligations. (*Id.* at § 4.7). Therefore, plaintiff's petition proves that which it now tries to undermine; that is, its claims, regardless of sounding in tort or contract, are "inextricably interwoven" with the relationship arising under the IDMA.[2] *Terminex*, 988 S.W.2d at 703, 706.

---

[2]Furthermore, as Defendant points out, Ascension may not avoid an arbitration clause by merely asserting fraud in the inducement of the entire contract. Instead, "allegations of fraud in the inducement of the underlying contract are matters for the arbitrator to decide." *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925 (Tex. App.–Houston [1st District] 1996, no writ). Similarly Ascension cannot escape the arbitration clause by asserting that the actionable conduct occurred before the contract because of the merger clause in the contract. (IDMA at Section XIII.8).

Plaintiff's second argument is that the Court should take a narrow reading of the arbitration clause at issue. However, neither the plaintiff nor the Court has been able to find precedent for a narrow interpretation of such a clause. Instead, both caselaw and plaintiff's allegations suggest that the claims arise directly out of the "interpretation and performance" of the agreement. For instance, plaintiff asserts that it "relied upon curasan's representations *in the performance of its obligations*" and that it "relied upon curasan's representation when it entered into the IDMA and *in the performance of its obligations thereunder*." (Plaintiff's Original Petition at §§ 5.1, 6.1). Furthermore, upon independent inquiry, the Court has found relevant jurisprudence showing that such clauses are regularly construed broadly. *See Mar-Len of Louisiana, Inc., v. Parsons-Gilbane*, 773 F.2d 633, 635-36 5th Cir. 1985 (finding identical language to be "broad enough" and "sufficiently broad"), *see also Jureczki v. Banc One Texas*, 252 F. Supp. 2d 368, 375 (S.D. Tx. 2003) (finding that the terms "interpretation and performance" suggest a broad agreement.). Therefore, it appears that the claims at issue in this case are within the scope of the parties' agreement to arbitrate. There being no issue of validity that the Court may consider, and because the claims are within the scope of the arbitration agreement in the IDMA, it appears that arbitration is required in this case.

## IV. RECOMMENDATION

The Magistrate Court RECOMMENDS that the District Court GRANT Defendant's Motion to Dismiss and Compel Arbitration (Clerk's Docket No. 12).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 20th day of September, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE